IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH D. PHELON,<br><br>   Petitioner,<br><br> v.<br><br>TOM L. CAREY, Warden,<br><br>   Respondent. | No. C 05-1713 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner, a prisoner at California State Prison, Solano, seeks a writ of habeas corpus under 28 USC § 2254. For the reasons discussed below, the petition is denied.

**STATEMENT OF THE CASE**

Petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of San Francisco of kidnaping with intent to commit rape and various other related crimes and enhancements. On April 19, 2000, he was sentenced to 11 years in state prison.

On May 23, 2002, the California Court of Appeal rejected petitioner's claim that the trial court erred in denying his motion to suppress, and affirmed the judgment. On August 14, 2002, the Supreme Court of California denied review.

On July 29, 2003, petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court. See Phelon v. Carey, No. C 03-3501 CRB (PR) (N.D. Cal. filed

July 29, 2003). Per order filed on November 24, 2003, the court dismissed petitioner's Fourth Amendment claim under the rationale of Stone v. Powell, 428 U.S. 465 (1976), but ordered respondent to show cause why a writ of habeas corpus should not be granted as to petitioner's claims of ineffective assistance of counsel. Respondent instead moved for dismissal on the ground that the claims were not exhausted because they were not fairly presented to the Supreme Court of California. Per order filed on July 14, 2004, the court granted respondent's motion and dismissed the petition without prejudice to refiling after exhausting state judicial remedies.

Petitioner returned to state court and filed three habeas corpus petitions in the Supreme Court of California. All the petitions were denied.

On April 26, 2005, petitioner filed the instant petition in this court. On July 27, 2005, this court again dismissed petitioner's Fourth Amendment claim, and issued an order to show cause why it should not grant relief on the ineffective assistance of counsel claim. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**STATEMENT OF THE FACTS**

The California Court of Appeal summarized the facts of the case as follows:

> On September 27, 1997, Kristine B. arrived at a San Francisco nightclub intoxicated. Feeling ill, she left the club and returned to her car, where she sat on the curb waiting for her friends to return. Appellant approached Kristine B. from behind, grabbed her arms, and said, "Don't say anything. Get up or I will kill you." Complying with his orders, she followed appellant to a small stairwell not far from the club and adjacent to appellant's apartment building. Appellant pushed Kristine B. down the stairs, picked her back up, pushed her up against a wall, and began hitting her face with his closed fist. While restraining the victim against the wall, appellant removed her underwear and began reaching for his pants before footsteps were heard. Appellant then left the scene.
>
> The footsteps belonged to Jerry Davis, the front desk security officer at appellant's residential building, who had observed appellant and the victim walk to the stairwell area from his security monitor. As Davis walked toward the crime scene, he observed the victim in the stairwell, legs in an awkward position, motionless, underwear off, and pubic region exposed. He saw appellant walking away from the area; appellant looked at Davis and the two walked toward each other. Appellant informed Davis that Kristine B. was with him, that they were having problems, but the situation was resolved. Davis warned appellant that he and the victim were trespassing and instructed them to

leave the area. Appellant agreed and returned to the stairwell where he struck the victim one more time, while Davis returned to his post at the front desk.

Kristine B. testified that she tried to yell for help but could not make her voice project. Appellant came back down the stairs and hit her "really hard" in the face, then left.

Kristine B. struggled unsuccessfully to find her underwear, ascended the stairs, and returned to the nightclub. A police officer at the club, Ian Furminger, observed feces on the victim's legs and blood on her swollen face. After the officer spoke with Kristine B. and an ambulance had arrived, Officer Furminger discovered the crime scene nearby, where he found women's underwear, earrings, blood, and feces. He also encountered Davis, who directed him to appellant's apartment.

At appellant's door, Officer Furminger noticed blood below the handle. He proceeded to knock for about five to ten minutes and eventually appellant opened the door, dressed only in his underwear. Officer Furminger performed a "leg sweep" to place appellant on the floor and handcuffed him. The door to appellant's apartment had automatically closed and locked behind appellant. Officer Furminger asked appellant's permission to enter the apartment to obtain clothes for appellant and appellant consented.

Inside appellant's apartment, Officer Furminger noticed a pair of pants over a chair, a wet white T-shirt, and a shoe with feces on it. These items, in addition to a washcloth found on appellant's bed and another shoe discovered in a subsequent warrantless search, were seized.

DNA testing on a shoe indicated blood consistent with the victim's DNA. The washcloth revealed the presence of feces. Blood near appellant's door handle was consistent with his own DNA and blood found at the scene of the crime tested consistent with that of Kristine B.

Appellant testified at trial that he did not assault the victim, but rather that she was already battered and bruised when he first approached her. Appellant stated his intention throughout the night was to assist the victim, given the unsafe location of the club and early morning hour, but that his efforts were frustrated by Kristine B. For example, appellant wanted to call the police, but Kristine B. refused, preferring not to have her parents notified. Appellant testified that he offered to take the victim into the lobby of his building to help her clean up, but when they arrived at the building Kristine B. said she did not want anyone to see her. Instead, appellant and the victim went to the stairwell adjacent to appellant's building so that Kristine B. could sit while appellant grabbed a towel from his apartment. Appellant testified that Kristine B. fell face first as she descended the stairwell; he went down to help her up; she removed her earrings and underwear; and he told her to "get it together" and put her underwear on while he went for a towel. Appellant noticed there was feces on his shoe, "like she had went to the bathroom on herself."

Roosevelt Campbell, who lived in appellant's building and knew appellant, testified that he saw appellant at about 2:00 a.m. on September 27, sitting on the curb of Third Street and talking with a young woman whose face was swollen and who had a "busted lip." Campbell exchanged greetings with appellant and did not see any struggle or argument between appellant and the

3

> woman. As he walked away, Campbell glanced back and saw appellant and the woman walking together but not touching.
>
> Appellant presented several character witnesses who testified to his honesty and peaceful nature. He had served as a student body officer while attending Chabot College in 1995 and 1996 and had coordinated events including a "stop the violence" campaign addressing domestic violence, suicide prevention and rape prevention.

People v. Phelon, No. A091478, slip op. 3-7 (Cal. Ct. App. May 23, 2002).

## DISCUSSION

A.   Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies that correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

4

The only definitive source of clearly established federal law under 28 U.S.C § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.  Claims & Analysis

On April 26, 2005, petitioner filed a pro se petition for a writ of habeas corpus under § 2254 alleging sixty-eight instances of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id.

To aid in the discussion of each of petitioner's numerous claims of ineffective assistance of counsel, the court has grouped the claims into four categories: (1) counsel's tactical errors; (2) counsel's improper advice; (3) counsel's failure to investigate; and (4) counsel's failure to report misconduct.

1.  Counsel's Tactical Errors

The majority of petitioner's claims pertain to specific tactical errors allegedly made by petitioner's counsel during the course of the trial.

Judicial scrutiny of counsel's tactical decisions must be highly deferential. United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985). A difference of opinion as to trial tactics does not constitute denial of effective assistance, and tactical decisions are not

5

ineffective assistance simply because in retrospect better tactics are known to have been available. Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1983); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981). Nevertheless, the label of "trial strategy" does not automatically immunize an attorney's performance from Sixth Amendment challenges. United States v. Span, 75 F.3d at 1389-90 (9th Cir. 1986). Furthermore, prejudice may result from the cumulative impact of multiple tactical errors. Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1995). In a case involving multiple alleged deficiencies, the petitioner must prove that there is a reasonable probability that absent the various deficiencies, the outcome of the trial might well have been different. Harris v. Wood, 64 F.3d 1432, 1438 (9th Cir. 1995).

Petitioner alleges that counsel was ineffective with respect to his (a) cross examination, (b) direct examination, (c) treatment of physical evidence and exhibits, (d) closing argument and (e) voir dire. Petitioner's tactical error claims are without merit. In light of the overwhelming evidence of petitioner's guilt, it is not reasonably probable that the alleged tactical errors, whether taken singly or together, affected the outcome of the trial. See Strickland, 466 U.S. at 694.

### a. Tactical Errors Related to Cross-Examination

Petitioner claims he was prejudiced by trial counsel's tactical decision to refrain from impeaching or from asking a particular line of questions to the following witnesses: (i) Jerry Davis, (ii) Kristine B., (iii) Kelly Ryan, (iv.) police officers Furminger and Ortega; (v.) Brian Wraxall; and (vi.) Anthony Belmonte.

#### i. Jerry Davis

Petitioner claims counsel was ineffective because of his failure to cross-examine Jerry Davis effectively. Petitioner specifies four separate errors with respect to counsel's cross-examination of Davis: (1) counsel failed to challenge Davis's bias with respect to possible leniency from the prosecution in a matter involving the Social Security Administration; (2) counsel failed to question Davis about his inconsistent testimony; (3)

6

1  counsel failed to use audio-tapes and posterboards in his cross-examination of Davis; and (4)
2  counsel failed to impeach Davis with Davis's prior convictions.

3　　　　The first three of petitioner's four claims are without merit.  Petitioner has provided
4  no evidence to support Davis's alleged "trouble with Social Security Administration."  The
5  claim is entirely speculative.  This cannot do.  It is well established that unsupported claims
6  of ineffective assistance of counsel are insufficient to warrant habeas relief.  Dows v. Woods,
7  211 F.3d 480, 487 (9th Cir. 2000); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).   As to
8  Davis's alleged inconsistencies, the record demonstrates that the few inconsistent statements
9  Davis made that were significant to the case, such as Davis's speculation that he discovered
10 Kristine B. unconscious on the stairwell after he had previously stated that he discovered her
11 face down and could not tell if she was unconscious, were indeed challenged by counsel
12 during the cross-examination.  Furthermore, counsel's decision not to use audio-tapes and
13 posterboards in his cross-examination was by no means unreasonable under professional
14 norms.  See Strickland, 466 U.S. at 687-688.

15　　　　Counsel's failure to impeach Davis with his prior convictions also fails to provide a
16 basis for habeas relief.   A prior conviction of a crime of moral turpitude may be used for the
17 purpose of impeaching a witness's credibility if the conviction is not too remote in time.  Cal.
18 Evid. Code § 788.  As the record demonstrates, Davis had convictions from 1978, 1981 and
19 1991, which may have been for robbery and assault with a deadly weapon.  In view of the
20 convictions' remoteness and likely inadmissibility, it cannot be said that it was unreasonable
21 for counsel to refrain from attempting to impeach Davis with the prior convictions.  But even
22 if there was no reasonable tactical basis for trial counsel's decision to refrain from
23 impeaching Davis's testimony with his prior convictions, the evidence of petitioner's guilt
24 was overwhelming to such a degree that no prejudice could have resulted.  The record is
25 replete with evidence supporting petitioner's conviction: Kristine B.'s identification of the
26 petitioner in a photo spread despite having never met the petitioner before September 27,
27 1997; Kristine B. was covered in blood and feces after the incident and stated to police that
28 she had lost her underwear; women's underwear, earrings, blood and feces discovered at the

7

1  crime scene; blood found on the door of petitioner's apartment was consistent with
2  petitioner's DNA; blood and feces found on a shoe obtained inside petitioner's apartment
3  was consistent with Kristine B.'s DNA; a security camera placing petitioner at the crime
4  scene with the victim; petitioner's testimony admitting he was with the victim on the night in
5  question; and Kristine B.'s detailed testimony of the assault committed by the petitioner.  In
6  light of all this incriminating evidence, it simply cannot be said that there is a reasonable
7  probability that, had counsel impeached Davis's testimony with his prior convictions, the
8  verdict would have been different.  See Strickland, 466 U.S. at 694.

          ii.      Kristine B.

10       Petitioner claims he was prejudiced by counsel's failure to cross-
11  examine Kristine B. effectively.  Petitioner specifies five separate errors with respect to
12  counsel's questioning of Kristine B.: (1) counsel failed to challenge Kristine B.'s
13  misidentification of petitioner's clothing; (2) counsel failed to impeach Kristine B. with
14  inconsistent statements as to whether the petitioner "unfastened his pants"; (3) counsel failed
15  to impeach Kristine B. as to an abortion in her medical history; (4) counsel failed to question
16  the manner in which Kristine B.'s earrings were removed; and (5) counsel failed to question
17  Kristine B. as to the reason she was denied entry into the nightclub.

18      All of these claims lack merit.  Counsel was not ineffective for failing to impeach
19  Kristine B. with respect to her alleged misidentification of petitioner's clothing because
20  petitioner did not base his defense on mistaken identity.  Rather, petitioner testified at trial
21  that he was with Kristine B. on the night in question; petitioner's defense was that he was
22  helping the victim.  Moreover, Kristine B. testified that the petitioner was wearing a white t-
23  shirt and jeans.  This was consistent with the wet white t-shirt officers found in petitioner's
24  apartment immediately after the assault.  Furthermore, Kristine B. positively identified
25  petitioner in a photographic lineup and at trial.

26      Kristine B.'s testimony at the preliminary hearing on the issue as to whether petitioner
27  "unfastened his pants" was not inconsistent with her statements at trial.  Kristine B. testified
28  at the preliminary hearing that  petitioner's arms went down to his pants.  At trial, she stated

8

that petitioner "went to reach for like the button, like the waistline of his pants." These statements are consistent, and not a basis for impeachment.

Petitioner does not set forth any facts showing how the victim's medical history, the removal of her earrings, and/or her alleged denial of entry to the night club were relevant to this trial. The claims are at best speculative and not a basis for federal habeas relief. See James, 24 F.3d at 26.

### iii. Kelly Ryan

Petitioner claims that his counsel failed to cross-examine Kelly Ryan effectively on two grounds: (1) counsel should have impeached Kelly Ryan's testimony that she knew Kristine B. was outside the club with the statement Ryan made on Inspector O'Connor's report where she said that she did not know if Kristine B. was outside the club; and (2) counsel should have challenged Ryan's testimony that she did not remember what Kristine B. told her when Ryan encountered Kristine B. outside of the club after the assault.

These claims are without merit. Petitioner fails to show the relevance of the alleged inconsistent statements. Again, the claims are at best speculative and not a basis for federal habeas relief. See id.

### iv. Police Officers Furminger and Ortega

Petitioner claims that his counsel was ineffective in cross-examining Furminger and Ortega by refraining to ask about (1) information obtained from a *Pitchess* motion regarding Furminger's history, (2) inconsistencies in Furminger's and Ortega's reports and (3) the fact that there was no reference in the officers' reports of petitioner removing Kristine B.'s underwear or that he tried to rape her.

These claims are without merit. Petitioner has not presented any support for his allegation regarding Officer Furminger's past nor shown how Furminger's past was relevant to this case. As to the inconsistencies in the officers' reports and/or there being no mention of petitioner removing the victim's underwear or trying to rape her in the reports, there is no reasonable likelihood that, had counsel brought up these matters, the verdict would have been

9

different.  See Strickland, 466 U.S. at 694.  After all the alleged inconsistencies and omissions in the officers' reports could have easily been attributable to the urgency of the victim's injuries and the fact that the assailant was still at large.

                    v.      Failure to Question Brian Wraxall

Brian Wraxall, the state's forensic serologist, testified at trial as to the extracting, preparation, and analyzing of DNA evidence taken from the petitioner's apartment.  Wraxall testified that one of the blood stains on the petitioner's door consisted of a "mixture."  Wraxall concluded that the "primary stain" was consistent with petitioner and that the secondary stain was not consistent with either petitioner or the victim.  Wraxall deemed the secondary stain "background material," noting that "doors and areas that are constantly touched contain small amounts of DNA that can build up."   Petitioner claims that counsel should have asked Wraxall additional questions about the secondary stain.  Petitioner, however, does not show why counsel's failure to do so was unreasonable and that this resulted in prejudice.  A review of the record in fact indicates that counsel challenged the validity of the testing and the statistical significance of Wraxall's findings to no avail.  It is not reasonably probable that, had counsel asked Wraxall additional questions about the secondary stain, the verdict would have been different.  See Strickland, 466 U.S. at 694.

                    vi.      Failure to Question Anthony Belmonte

Petitioner argues that counsel should have elicited testimony from Anthony Belmonte that petitioner was a "friendly guy who sometimes had guests stay after visiting hours" and that Davis was "strange and weird."  Petitioner does not show how Belmonte's impression of Davis and petitioner was relevant or how such testimony would have resulted in a more favorable outcome for petitioner.  The claim is without merit.

           b.      Tactical Errors Related to Direct Examination

Petitioner claims that he was prejudiced by counsel's deficient performance during direct examination.  Petitioner claims that counsel was ineffective for (i) failing to ask specific questions to defense witnesses and (ii) for failing to call three potentially favorable witnesses.

10

//

i. <u>Failure to ask specific questions</u>

Petitioner claims that counsel was ineffective in the questioning of defense witnesses by (1) failing to ask defense witness Bette Davis to read her letter of reference and (2) failing to question petitioner about his alcohol and drug use on the night of the assault, thereby eliminating the possibility of a voluntary intoxication defense.

Petitioner is not entitled to federal habeas relief on these claims. Petitioner makes no showing on why Davis's letter was relevant. Regardless, counsel had already presented several other witnesses who testified as to petitioner's good character and reputation for honesty. Davis's letter testimony likely would have been cumulative. Nor was counsel ineffective for failing to question petitioner about his alcohol and drug use. A voluntary intoxication defense would have contradicted petitioner's testimony at trial that the victim had already been assaulted when petitioner encountered her.

ii. <u>Potentially favorable witnesses</u>

Petitioner claims counsel was ineffective for failing to call the following three potentially favorable witnesses: (1) additional medical personnel; (2) nightclub personnel; and (3) Frances Ku.

Petitioner claims that the paramedics who took Kristine B. to the hospital and the medical staff that treated her after the incident would have testified that the victim did not claim that petitioner tried to rape her and that the victim was intoxicated. Petitioner claims that nightclub personnel also would have testified as to the victim's intoxicated state. Such testimony, however, likely would have been cumulative, as the victim's alcohol consumption and the fact that no rape had occurred had already been established by previous testimony. It is not reasonably probable that additional testimony on these issues would not have resulted in a more favorable outcome for petitioner. See <u>Strickland</u>, 466 U.S. at 694.

Petitioner claims that counsel was ineffective for failing to call Frances Ku, a former tenant in petitioner's building who allegedly threatened to sue Davis for sexual harassment. Petitioner does not set forth a declaration from Ku or other evidence in support of his claim.

11

1 Regardless, in light of the overwhelming evidence against petitioner, it is not reasonably
2 probable that, had Ku's alleged testimony been presented, the verdict would have been
3 different. See Strickland, 466 U.S. 694.

    c.  Tactical Errors Related to Physical Evidence

Petitioner claims he was prejudiced by the alleged tactical errors counsel made with respect to his treatment of physical evidence. Petitioner claims that counsel was ineffective by (i) failing to introduce defense evidence and (ii) by neglecting to challenge prosecution evidence.

    i.  Failure to Introduce Defense Evidence

Petitioner claims he was prejudiced by counsel's deficient performance with regard to defense evidence. Petitioner claims the following: (1) counsel failed to introduce a business card on which petitioner claimed he wrote the victim's telephone number when he and the victim were allegedly talking on the curb on the night in question; (2) counsel failed to introduce investigation reports from a private investigation company which would have impeached Davis's alleged statement at trial that petitioner claimed the victim was his girlfriend; (3) counsel withdrew two exhibits introduced at trial regarding the victim's medical care; and (4) counsel failed to introduce any physical evidence for the jury to consider.

The first two claims are without merit. Petitioner fails to provide evidence that the alleged business card exists; petitioner made no reference to it during his testimony at trial nor supported this allegation with an affidavit. Conclusory allegations of ineffective assistance of counsel are insufficient to warrant habeas relief. James, 24 F.3d at 26. Much less where, as here , there is no showing of prejudice either. As to the private investigator's reports, these documents likely constitute inadmissible hearsay. Moreover, the reports fail to contradict Davis's testimony at trial on this issue. At trial, Davis stated that the petitioner said that "the girl was with him"; he gave the private investigator a nearly identical account.

Petitioner is not entitled to habeas relief on the other two claims either. A review of the record demonstrates that counsel's decision to withdraw the two exhibits introduced at

12

trial regarding the victim's medical care was reasonable. Before asking to withdraw the exhibits, counsel noted that the documents contained hearsay statements that were "really detrimental to my client's case." Additionally, the favorable evidence that petitioner alleges the exhibits would have provided - the fact that the victim stated to medical personnel that no sexual assault occurred - was already brought to light by Dr. Stephens's testimony. Nor does petitioner show prejudice from counsel's decision not to introduce any physical evidence for the jury to consider during deliberation. Petitioner does not point to any physical evidence that, had counsel introduced during jury deliberation, would have made it reasonably probable that the jury would have returned a different verdict. See Strickland, 466 U.S. at 694.

           ii.       Failure to Object to Prosecution Evidence

Petitioner claims he was prejudiced by counsel's failure to object to the following evidence offered by the prosecution: (1) an incident report written by Davis which the defense did not possess at the preliminary hearing; (2); false and irrelevant evidence; and (3) DNA-related evidence.

The first two claims are without merit because petitioner could not have been prejudiced by Davis's incident report because it was never introduced at trial. As to petitioner's claim that counsel failed to object to false and irrelevant evidence, petitioner fails to articulate what evidence was false and irrelevant. Such conclusory allegations do not warrant habeas relief. James, 24 F.3d at 26.

Petitioner argues that counsel was ineffective for failing to object to the prosecution's introduction of DNA evidence because it was "contaminated," irrelevant due to the fact that contact between petitioner and the victim was conceded, and prejudicial because of evidence of a penile swab. The claims are without merit. Nothing on the record suggests that the DNA samples were contaminated in such a way that compromised their reliability; the DNA evidence was relevant to proving an essential element of the charge, that petitioner was in contact with the victim; and no evidence of a penile swab was admitted during trial.

//

13

//

d.    Tactical Errors Related to Closing Argument

Petitioner argues that he was prejudiced by counsel's deficient performance during closing argument. Among the errors and omissions that petitioner takes issue with are counsel's failure to argue each and every element of the charges, the fact that counsel "played the race card," and counsel's decision not to use a timeline during closing argument.

"While the right to effective assistance extends to closing argument, judicial deference to counsel's tactical decisions in closing presentation is particularly important because of the broad range of legitimate defense strategy at the time." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam) (counsel's exclusion of some issues in closing did not amount to professional error of constitutional magnitude where issues omitted were not so clearly more persuasive than those raised). The record shows that counsel reasonably disputed the most important elements of the charges: the force used to move the victim, petitioner's intent, the duration of the encounter and the absence of great bodily injury. The issues that petitioner alleges that counsel omitted were not essential, and by no means more persuasive than those raised. Cf. id. Petitioner is not entitled to federal habeas relief on this claim.

e.    Tactical Errors Related to Voir Dire

Petitioner's claim that counsel was ineffective during voir dire is without merit. Petitioner argues that defense counsel failed to ask the first 18 prospective jurors the questions he submitted to the trial court for voir dire. However, petitioner provides no evidence that the prospective jurors were not asked questions similar to those submitted or that any of these prospective jurors were part of the jury. Moreover, petitioner does not show how counsel's decision during voir dire ultimately prejudiced the outcome of the trial. See Strickland, 466 U.S. at 694. This claim is entirely speculative.

2.    Counsel's Improper Advice

Petitioner claims he was prejudiced by trial counsel knowingly consenting to his assistant's advice to present false testimony. Petitioner claims that counsel's assistant

14

1 gave him false statements to say in trial.  However, petitioner provides no evidentiary
2 support for this claim.  <u>James</u>, 24 F.3d at 26.  Nor does he show how this alleged malfeasance
3 prejudiced the outcome of his trial.  Petitioner is not entitled to federal habeas relief on the
4 claim.

        3.      <u>Counsel's Failure to Investigate</u>

Petitioner claims he was prejudiced by his counsel's failure to make a reasonable investigation by neglecting to interview potentially favorable witnesses and failing to measure the distance moved by the victim and challenge it in the prosecution's case.

Although petitioner provides a list of names of so-called "potential witnesses," he has presented no evidence whatsoever showing that they would have been found, would have testified on his behalf, and would have provided useful testimony.  See <u>Wildman v. Johnson</u>, 261 F.3d 832, 839 (9th Cir. 2001) (absence of potential witness declaration rendered ineffective assistance of counsel claim based on failure to call witness speculative); <u>Dows</u>, 211 F.3d at 486 (rejecting ineffective assistance of counsel claim because petitioner provided no evidence that witness would have provided helpful testimony for defense).  Petitioner's mere speculation that one of the listed potential witnesses might have offered helpful testimony if interviewed is not enough to establish ineffective assistance of counsel and obtain federal habeas relief.  See <u>Grisby v. Blodgett</u>, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what expert would say is not enough to establish prejudice); <u>Bragg v. Galaza</u>, 242 F.3d 480, 486 (9th Cir. 2000) (same).

Petitioner's claim that counsel failed to measure or challenge the distance moved by the petitioner and victim does not provide a basis for habeas relief either.  First, California law does not a minimum distance that a victim must be moved in order to satisfy the movement prong of kidnaping.  See <u>People v. Rayford</u>, 9 Cal. 4th 1, 12 (1994).  Second, there is no indication that counsel did not measure the distances involved in the case.  On the contrary, counsel challenged Inspector O'Connor's testimony of the distance traveled along 3rd Street, therefore indicating that counsel likely measured the distances.  Third, and most

15

1  importantly, petitioner does not show prejudice. In light of the substantial evidence of guilt
2  against petitioner, there is no reasonable probability that the result of the proceeding would
3  have been different simply if counsel had presented a more accurate measurement of the
4  distance traveled. See Strickland, 466 U.S. at 694.

### 4.  Failure to Report or Challenge Misconduct

Petitioner alleges that he was prejudiced by counsel's failure to report or challenge three instances of misconduct: (1) counsel failed to notify the trial judge that witness Davis asked petitioner for money in exchange for him not to testify at trial; (2) counsel failed to request a copy of "notes" that were found in three jurors' notepads during trial; and (3) counsel failed to object to the prosecution's characterization of petitioner as a "predator" during opening statements.

The claims are without merit. As to the claim involving Davis, petitioner provides no evidence that Davis asked petitioner for money to "disappear," or that counsel knew of this incident. Moreover, such conduct likely would not have resulted in a mistrial because the incident allegedly occurred outside the presence of the jury and would not be incurably prejudicial. At most, counsel could have cross-examined Davis for bias on this issue, and, in light of the substantial evidence tending to prove petitioner's guilt, it is not reasonably probable that the verdict would have been different. See Strickland, 466 U.S. at 694.

Petitioner is incorrect when he claims that counsel was ineffective because he did not "see nor ask to receive a copy of notes" that were found in three jurors' notepads during trial. The record shows that the jurors alerted the court as to the existence of the notes; the court took possession of the notes; the court stated on the record that the notes did not appear to be related to this trial and were from another trial; the pages were shown to counsel; and both sides stipulated that the pages should be destroyed. Counsel's performance on this issue was not unreasonable. Petitioner has not shown that counsel's failure to obtain a copy of the notes constituted professional deficient performance and prejudiced the outcome of the trial.

Counsel was not ineffective for failing to object to the prosecution's characterization of petitioner as a "predator" during opening statements. "Absent egregious misstatements,

16

the failure to object during the closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993).  Even if the prosecutor's characterization bordered on misconduct, it cannot be said that the single use of the word "predator" in the opening statement prejudiced the outcome of the trial.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The court is satisfied that the state courts' rejection of petitioner's ineffective assistance of counsel claims was not an objectively unreasonable application of Strickland, or involved an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  None of the myriad claims petitioner has raised satisfy Strickland.

The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: September 21, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE